IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PERRY DAWES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 23-2717 |

**O P I N I O N**

SCOTT W. REID                                                                           DATE:  January 12, 2024
UNITED STATES MAGISTRATE JUDGE

       Perry Dawes brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.     *Factual and Procedural Background*

       Dawes was born on May 24, 1960. Record at 212. He completed high school. Record at 235. He worked in the past as a security guard and as a school security officer. Record at 235, 44-45. On December 2, 2020, Dawes filed an application for DIB. Record at 212. He asserted disability since October 5, 2017, as a result of pulmonary embolism, heart failure, shortness of breath, injury to the neck and left upper extremity, and chronic pain. Record at 212, 234. He later changed his alleged onset date to January 12, 2019. Record at 42.

       Dawes's application was denied initially, and upon reconsideration. Record at 78, 93. He then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 123. A hearing was held on May 13, 2022. Record at 37. On June 3, 2022, however, the ALJ

issued a written decision denying benefits. Record at 18. The Appeals Council denied Dawes's request for review on May 18, 2023, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1. Dawes then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her Decision, the ALJ found that Dawes suffered from the severe impairments of cervical spondylosis, cervicalgia with radiculopathy, congestive heart failure, and a pulmonary embolism.  Record at 21.  She found that none of his impairments and no combination of impairments met or medically equaled a listed impairment.  Record at 21-23.

The ALJ determined that Dawes retained the RFC to engage in light work with the following limitations:

[H]e cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; and can frequently perform all other postural movements.  The claimant can frequently reach in front and to the side with his non-dominant upper extremity.  With the non-dominant upper extremity, the claimant can frequently handle, finger, and feel.  The claimant can occasionally push, pull, and reach overhead with the non-dominant upper extremity.  The claimant can use the dominant upper extremity frequently to perform all manipulative activities.  He can have only occasional exposure to concentrated pulmonary irritants such as fumes, dust, smoke, and mold.

Record at 23-4.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Dawes could return to his past relevant work as a security guard. Record at 29. Therefore, she found him not to be disabled, at the fourth stage of the sequential analysis. Record at 30. In Dawes's Request for Review, however, he argues that the ALJ failed to account for the total limiting effects of his impairments, in that she wrongly evaluated his own statements, and the evidence provided by Uplekh Purewal, M.D., his treating pain management specialist.

IV.     *Discussion*

   A.     *Dr. Purewal's Report*

In a two-page Medical Source Statement dated April 26, 2022, Dr. Purewal, of the Relievus pain management practice, indicated that Dawes could sit for a total of 2-4 hours, and stand or walk for a total of two hours, out of an 8-hour workday. Record at 926. This, alone, would be work-preclusive, since it does not total eight hours. Dr. Purewal also indicated that Dawes could lift up to ten pounds, but rarely, and could never lift more than that. *Id*. He could rarely reach in all directions, including overhead, and could rarely handle, finger, or feel. *Id*.

Dr. Purewal also indicated that Dawes's pain would frequently interfere with the attention or concentration necessary to perform even simple tasks. Record at 927. He would need a five to ten-minute break every two hours, and would be absent due to his impairments four or more days per month. *Id*.

The ALJ found Dr. Purewal's opinions "not persuasive." Record at 29. She wrote that they were unsupported by Dr. Purewal's own treatment notes, which showed Dawes to be physically normal, aside from some weakness and limited motion in his left upper extremity. *Id*. Indeed, Relievus notes from before and during the relevant period consistently report normal

4

functioning and full strength in Dawes's right arm, and some also note full 5/5 strength in both legs.  Record at 669 (October 5, 2021); 626 (February 8, 2021); 422 (November 12, 2019); 406 (October 18, 2019; 404 (August 27, 2019).

Elsewhere in the record, physical therapy notes indicate repeatedly that Dawes' functioning in his right arm was within normal limits.  Record at 374 (July 20, 2019), 383 (May 24, 2019); 378 (January 7, 2019).  John A. Handal, M.D., an orthopedic surgeon who examined Dawes for his Workers' Compensation case, also reported that he had a normal gait.  Record at 1001 (July 10, 2020); 992 (June 28, 2019).  Although the ALJ rejected Dr. Handal's conclusion that Dawes had unlimited physical functioning, she accepted his normal findings upon physical examination.  Record at 28.

Earlier, on November 28, 2017, Christian Fras, MD, FACS, a surgeon who also acted as a medical examiner in Dawes's Workers' Compensation claim, found him to walk and stand normally without an assistive device, and to have full strength in his hips and all muscles in his legs.  Record at 970.  Further, there is no indication in the record that Dawes ever sought medical care or received physical therapy for anything pertaining to his legs.

Clearly, therefore, substantial evidence supported the ALJ's conclusion that Dr. Purewal's more extreme findings, particularly those as to his ability to lift (including with his dominant right arm), and to walk, were unsupported by his own treatment notes and inconsistent with the record as a whole.

Notably, Dr. Purewal's opinion that Dawes was limited to 2-4 hours of sitting, and two hours of standing or walking is inexplicable, coming from a doctor who treated him only for neck and shoulder pain.  Similarly, his findings regarding Dawes's extreme limitation in concentration is unsupported by his treatment notes, since Dawes was never evaluated at

5

Relievus for mental limitations. The only evidence in the record supporting limited concentration is Dawes's own testimony, which is discussed in detail below.

It should also be noted that, despite finding Dr. Purewal's April 26, 2022, Medical Source Statement unpersuasive, the ALJ imposed significant limitations on Dawes's use of his left upper extremity. She did not, as Dawes states, find that he could use it frequently for all reaching, but only for reaching in front and to the side; she limited him to only occasional reaching overhead. Record at 23-4. She also found that he could only occasionally push and pull with that arm. *Id*. Thus, Dawes has not shown that the ALJ wrongly evaluated Dr. Purewal's submission.

B.     *Dawes's Statements*

The ALJ included in her Decision a review of Dawes's own statements about his condition, citing both his testimony at the hearing and the Function Report he filed as part of his application for benefits:

> The claimant alleged that he cannot work because of issues including a pulmonary embolism, heart failure, and a neck and shoulder injury. He said that he experiences shortness of breath, chronic pain, fatigue, and weakness. He claimed that his impairments affect his ability to lift, bend, stand, walk, sit, kneel, and climb stairs. This claimant reported difficulty sleeping, caring for personal needs, making meals, and competing household chores. He testified that his medications cause side effects including rashes, hives, and drowsiness.

Record at 24. (Internal citations omitted).

Although the ALJ credited Dawes's statements to the extent that she limited him to light work with numerous limitations, she found that they were not entirely consistent with the medical and other evidence of record. *Id*. As to Dawes's physiological condition, as discussed above, she rejected the findings of Dr. Purewal and Dr. Handal. Record at 28, 29. She found more persuasive the opinions of agency medical consultants Marie Brislin, M.D., and Josie Mae Henderson, M.D., who reviewed Dawes's records and concluded that he was able to perform

light work with postural and manipulative limitations. Record at 28, *citing* Record at 86-9 (Dr. Brislin, upon initial review), and 102-7 (Dr. Henderson, upon reconsideration). She wrote that their findings were consistent with the physical examinations (also discussed above) which reported that Dawes had full strength everywhere except in his neck and left upper extremity, and was otherwise physically normal. Record at 28.

  As the ALJ reported, Dawes also testified that he was short of breath because of a significant pulmonary embolism he experienced on October 16, 2020, which resulted in congestive heart failure. Record at 46, 458 (Discharge summary of October 18, 2020, from Philadelphia VAMC). A year later, he told his physical therapist that he could not return to therapy because of the shortness of breath and fatigue caused by the embolism. Record at 26, 668 (Relievus Letter of October 5, 2021).

  Nevertheless, as the ALJ also noted, Dawes told his cardiologist on January 20, 2021, ten months previously, that he had resumed walking on the treadmill, although he still felt dizzy if he ran on the treadmill. Record at 27, 544. Upon physical examination, he was found to have normal "work of breathing." Record at 546. The treatment note continues: "encouraged to continue to push himself to achieve pre-PE [pulmonary embolism] level of physical activity." Record at 549. This, too, was reported by the ALJ. Record at 27.

  Evidently, therefore, Dawes's pulmonary embolism did not result in any medical prohibition against engaging in physical activity. On the contrary, Dawes's cardiologist told him to "push himself," indicating that increased activity was beneficial to him, rather than harmful.

Dawes writes: "Most critically, the primary error in the ALJ's deficient analysis is that she never compared his statements regarding his limited abilities to meet the basic requirements of light work to Dr. Purewal's opinion supporting such limitations." Plaintiff's Brief at 13. However, it is unclear exactly how Dawes feels that he was prejudiced by the ALJ's failure to put his testimony in the same paragraph with Dr. Purewal's opinions, given that the ALJ considered all the record evidence, including his testimony and Dr. Purewal's opinions, in a wholistic and detailed written decision.

Possibly, Dawes means to convey that the ALJ erred in failing to recognize that Dr. Purewal's opinions were supported by Dawes's testimony. However, the ALJ's failure to state this explicitly is irrelevant. This is because, considering them individually, she cited substantial evidence supporting her conclusion that neither Dawes's testimony nor Dr. Purewal's opinions were consistent with Dr. Purewal's own treatment records, the cardiologist's treatment records, the physical therapy records, or the RFC assessments provided by Drs. Brislin and Henderson. Accordingly, Dawes has not shown any error in the ALJ's assessment of his statements.

V.   *Conclusion*

In accordance with the above discussion, I conclude that Dawes's Request for Review in this case should be denied, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE